Steven D. Allison (CSB No. 174491)
sallison@crowell.com)
Samrah Mahmoud (CSB No. 285168)
smahmoud@crowell.com
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
Telephone: 949.263.8400
Facsimile: 949.263.8414

Gregory D. Call (CSB No. 120483)
gcall@crowell.com
CROWELL & MORING LLP
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

[Additional Counsel on Next Page]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rachel Smith, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Luxottica Retail North America, Inc., an Ohio corporation, dba LensCrafters; Eyexam of California, Inc., a California corporation,<br><br>Defendants. | Case No. 14CV0366 JAH (BLM)<br><br>Honorable John A. Houston<br>Courtroom 13B<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS LUXOTTICA RETAIL NORTH AMERICA, INC.'S AND EYEXAM OF CALIFORNIA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Notice of Motion filed concurrently]<br><br>Hon. John A. Houston<br>Courtroom: 13B<br>Hearing Date: August 3, 2015<br>Hearing Time: 2:30 p.m.<br><br>NO ORAL ARGUMENT REQUESTED<br><br>Operative Complaint Filed: May 4, 2015 |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

IRactive-6542051.3

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

Emily Kuwahara (CSB No. 252411)
ekuwahara @crowell.com
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

Attorneys for Defendants
Luxottica Retail North America Inc. dba LensCrafters
and EYEXAM of California, Inc.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................ 1

II.   BACKGROUND ............................................................................................ 3

III.  LEGAL STANDARD ..................................................................................... 5

IV.   ARGUMENT ................................................................................................. 6

   A.   Plaintiff (And The Eyewear Class) Lack Article III Standing To Pursue Claims Based On An Alleged Overpayment For Eyewear ...... 6

      1.   Plaintiff fails to allege an injury in fact ...................................... 7

      2.   Plaintiff fails to allege causation ................................................ 8

   B.   Similarly Plaintiff (And The Eyewear Class) Lack Statutory Standing Under the UCL, FAL, and the CLRA To Pursue Claims Based on the Alleged Overpayment for Eyewear ................. 10

   C.   Plaintiff Does Not Meet Article III or Statutory Standing Requirements for Her UCL "Unlawful" Claim ................................. 12

      1.   Plaintiff cannot connect her purchase of an allegedly non-comprehensive eye exam to Defendants' unlawful conduct ........................................................................................ 12

      2.   Purchasing an eye exam that Defendants were allegedly prohibited from selling does not establish standing ................ 15

   D.   Plaintiff Fails to Establish Any Likelihood of Future Injury as Required for Injunctive Relief Under Article III ............................. 16

   E.   Plaintiff Fails to State a CLRA, FAL, or UCL "Unfair" or "Fraudulent" Claim With Particularity ............................................. 17

   F.   Plaintiff's Misrepresentation Claims Should be Dismissed to The Extent They Rely on Alleged Misrepresentations Regarding Comprehensive Eye Exams ............................................................ 19

V.    CONCLUSION ............................................................................................ 21

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-i-

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

# TABLE OF AUTHORITIES

**Page**

## Cases

*Animal Legal Def. Fund v. Mendes*,
  160 Cal. App. 4th 136 (2008) ............................................................................ 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 5

*Backhaut v. Apple, Inc.*,
  No. 14-CV-00285-LHK, 2014 WL 6601776 (N.D. Cal. Nov. 19,
  2014) .................................................................................................................. 11

*Brazil v. Dole Food Co.*,
  935 F. Supp. 2d 947 (N.D. Cal. 2013) ............................................................... 18

*Brod v. Sioux Honey Ass'n, Co-op*,
  927 F. Supp. 2d 811 (N.D. Cal. 2013) ............................................................... 20

*Burns v. Tristar Prods., Inc.*,
  No. 14-cv-749-BAS (DHB), 2014 WL 3728115 (S.D. Cal. July 25,
  2014) .................................................................................................................. 16

*Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ............................................................................ 6

*Castagnola v. Hewlett-Packard Co.*,
  No. C 11-05772 JSW, 2012 WL 2159385 (N.D. Cal. June 13, 2012) ............... 17

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ....................................................................................... 5, 16

*Cullen v. Netflix, Inc.*
  No. 5:11-CV-01199-EJD, 2013 WL 140103 (N.D. Cal. Jan. 10,
  2013) .................................................................................................................. 12

*DaimlerChrysler Corp v. Cuno*,
  547 U.S. 332 (2006) ..................................................................................... 5, 12

*Drucker v. State Bd. Of Med. Exam'rs*,
  143 Cal. App. 2d 702 (1956) .............................................................................. 14

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Ford v. Hotwire, Inc.*,
   No. C-07-CV-1312 H (NLS), 2008 WL 5874305 (S.D. Cal. Feb.
   25, 2008) .................................................................................................. 19

*Frenzel v. AliphCom*,
   ___ F. Supp. 3d ___, No. 14-cv-03587-WHO, 2014 WL 7387150
   (N.D. Cal., Dec. 29, 2014) ................................................................ 6, 17, 18

*Hoang v. Vinh Phat Supermarket, Inc.*,
   No. CIV. 2:13-00724 WBS GGH, 2013 WL 4095042 (E.D. Cal.
   Aug. 13, 2013) .......................................................................................... 20

*Johnson v. Wells Fargo Home Mortg. Inc.*,
   No. EDCV 13-01044-VAP, 2013 WL 7211905 (C.D. Cal. Sept. 13,
   2013) .......................................................................................................... 20

*Kane v. Chobani Inc.*,
   No. 12-CV-02425-LHK, 2013 WL 5289253 (N.D. Cal. Sept. 19,
   2013) ..................................................................................................... 11, 15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................... *passim*

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ........................................................................ 10, 15

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) .................................................................. 19

*Lewis v. Casey*,
   518 U.S. 343 (1996) ................................................................................... 6

*Lorenzo v. Qualcomm Inc.*,
   No. 08CV2124 WQH (LSP), 2009 WL 2448375 (S.D. Cal. Aug.
   10, 2009) ................................................................................................... 12

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................... 6

CROWELL
& MORING LLP
ATTORNEYS AT LAW

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

*Pelayo v. Nestle USA, Inc.*,
   989 F. Supp. 2d 973 (C.D. Cal. 2013) ................................................. 20

*Stickrath v. Globalstar, Inc.*,
   527 F. Supp. 2d 992 (N.D. Cal. 2007) ................................................ 16

*Two Jinn, Inc. v. Gov't Payment Serv., Inc.*,
   No. 09CV2701JLS (BLM), 2010 WL 1329077 (S.D. Cal. April 1,
   2010) ................................................................................................. 8

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................... 6, 19

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2009) ........................................................... 11

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ............................................................ 5

*Wash. Envtl. Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) ............................................................ 7

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ...................................................... 5, 16

*Zivkovich v. Vatican Bank*,
   242 F. Supp. 2d 659 (N.D. Cal. 2002) ................................................. 7

**Statutes**

Cal. Bus. & Prof. Code § 655 .................................................................. 4

Cal. Bus. & Prof. Code § 2544 ......................................................... 14, 20

Cal. Bus. & Prof. Code § 2556 ................................................... 4, 13, 14

Cal. Bus. & Prof. Code § 3040 .............................................................. 14

Cal. Bus. & Prof. Code § 3041 .............................................................. 14

Cal. Bus. & Prof. Code § 17200 ..................................................... *passim*

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iv-

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

Cal. Bus. & Prof. Code § 17204 ................................................................... 11

Cal. Bus. & Prof. Code § 17500 ................................................................ *passim*

Cal. Bus. & Prof. Code § 17535 ................................................................... 11

Cal. Civ. Code § 1750 .............................................................................. *passim*

Cal. Code Regs., tit. 16, § 1399.251 ..................................................... 4, 14

Cal. Code Regs., tit. 16, § 1514 ............................................................ 4, 14

Cal. Health & Safety Code § 1368, *et seq.* ............................................ 15

**Other Authorities**

16 C.F.R. § 315.3 ........................................................................................ 9

16 C.F.R. § 456.2 ........................................................................................ 9

Fed. R. Civ. P. 9(b) ................................................................................ *passim*

Fed. R. Civ. P. 12(b)(1) ............................................................................. 5

Fed. R. Civ. P. 12(b)(6) ............................................................................. 5

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-v-

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

## I.   INTRODUCTION

In an amended complaint long on words but short on substance, Plaintiff again challenges the legality of the LensCrafters business model because consumers are able to "obtain on-site eye examinations and purchase their corresponding prescription eyewear" in LensCrafters locations. (First Am. Compl. ("FAC") ¶ 5, Doc. No. 24.) Plaintiff's original complaint named only Luxottica Retail North America, Inc. ("LRNA") and asserted claims under California's Unfair Competition Law ("UCL"), California Business & Professions Code section 17200 *et seq.*, and the Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750 *et seq.*, based on alleged violations of various statutes that purportedly prohibit "combined optometrist-optician operation[s]." (Not. Of Removal, Ex. A ("Original Compl.") ¶¶ 34-48, Doc. No. 1-2.) Plaintiff alleged that she was harmed because she underwent an eye exam at a LensCrafters location and then purchased and overpaid for the recommended eyewear. (Original Compl. ¶¶ 31-32.) The original complaint was dismissed in its entirety by this Court because Plaintiff failed to establish Article III and statutory standing. (Order Granting Defs.' Mot. to Dismiss ("Order") at 7, Doc. No. 23.)

Plaintiff now makes an equally unpersuasive attempt to state claims against LRNA, and for the first time, EYEXAM of California, Inc. ("EECA"), the healthcare services plan that employs the optometrists at LensCrafters. This time, Plaintiff's FAC throws in an additional claim under California's False Advertising Law and focuses on Defendants' advertising of "Independent Doctors of Optometry" and the importance of eye exams for eye health. (*See* FAC ¶¶ 56-57, 69, 126-32.) Plaintiff alleges that these advertisements "lure" consumers to LensCrafters on the belief they will receive a comprehensive eye exam from an independent optometrist, which she claims they do not in fact receive. (*Id.* ¶ 69.) She further alleges that once at LenCrafters for an eye exam, consumers purchase overpriced eyewear. (*Id.* ¶ 78.) Plaintiff seeks to pursue her claims on behalf of

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-1-

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

two distinct subclasses—(1) those who purchased an eye exam from an optometrist at a LensCrafters in California ("Eye Exam Class"), and (2) those who purchased for personal use eyewear at a LensCrafters in California using a prescription generated by an eye exam that occurred at a LensCrafters in California ("Eyewear Class"). (*Id.* ¶¶ 13.1-13.2.)

Plaintiff, however, lacks standing for most of her claims and otherwise fails to state claims against Defendants. Plaintiff's FAC should therefore be dismissed for the following reasons:

First, Plaintiff and the Eyewear Class still lack Article III and statutory standing under the UCL, CLRA, and FAL to pursue claims based on their alleged overpayment for eyewear. Plaintiff speculates that she would have "availed herself of the open market for prescription eyewear" and paid "at least $76.56 less" had she not been in LensCrafters for an eye exam. (*Id.* ¶ 97.) Plaintiff bases this number on an unscientific survey of four online retailers (*see id.* ¶¶ 96-97), but she never alleges that she would have purchased eyewear at any of these online retailers or at any other retailer that charges less than Defendants. Further, Plaintiff fails to allege facts plausibly connecting Defendants' advertising or business model to its purported ability to overcharge consumers for eyewear, nor does she allege facts plausibly establishing that Defendants' advertising or business model *caused her* to overpay for eyewear. Plaintiff (and the Eyewear Class) therefore fails to allege injury or causation for Article III or statutory standing; Plaintiff also fails to allege lost money or property as required for standing under the UCL or FAL.

Second, Plaintiff lacks Article III and statutory standing for her UCL "unlawful" claim. Plaintiff alleges that her *sole* motivation for coming to LensCrafters and purchasing an eye exam was her expectation—based on Defendants' advertisements of "independent doctors of optometry" and the importance of eye exams for eye health—that she would receive a comprehensive eye exam from an independent optometrist. (*Id.* ¶¶ 81-83.) But Plaintiff alleges no

CROWELL
& MORING LLP
ATTORNEYS AT LAW

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

facts establishing that these advertisements are unlawful, and her allegations establish the contrary. Indeed, there are no legally prescribed minimum standards for an eye exam in California. Thus, Plaintiff does not connect her alleged harm in paying for an eye exam to Defendants' purported *unlawful* conduct.

Third, Plaintiff lacks Article III standing for injunctive relief. Plaintiff's prayer for injunctive relief was previously dismissed by this Court because Plaintiff did not allege a likelihood of future injury. (Order at 7.) Plaintiff makes no efforts to address this deficiency in her FAC, and her prayer for injunctive relief should again be dismissed.[1]

Fourth, Plaintiff fails to plead her CLRA, FAL, and UCL "unfair" and "fraudulent" claims (the "misrepresentation claims")—all which sound in fraud— with particularity under Rule 9(b). Plaintiff does not allege which advertisements she viewed, when she viewed them, and what specifically they said.

Fifth, the misrepresentation claims also fail to the extent Plaintiff alleges she was misled into believing she would receive a comprehensive eye exam from Defendants' advertisements about eye health. Plaintiff fails to plausibly allege that a reasonable consumer would (1) believe they would receive a "comprehensive eye exam" after viewing these advertisements, which never used the word "comprehensive"; or (2) attribute the same complex meaning to the phrase "comprehensive eye exam" as Plaintiff does.

Thus, all of Plaintiff's claims remain defective for one reason or another. As a result, her complaint should be dismissed, and this time with no leave to amend.

## II.    BACKGROUND

Plaintiff filed her FAC on May 4, 2015. The FAC asserts the following

---

[1] By moving to dismiss on particular grounds such as lack of standing, Defendants do not concede that Plaintiff's underlying claims have merit.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

claims against Defendants for both an Eye Exam and an Eyewear Class:
(1) violation of the UCL for "unlawful" business practices; (2) violation of the UCL
for "fraudulent" business practices; (3) violation of the UCL for "unfair" business
practices; (4) violation of California's False Advertising Law ("FAL"), California
Business and Professions Code section 17500; and (5) violation of the CLRA.
(FAC ¶¶ 13.1-13.2, 98-142.5.)

California law restricts certain business and financial relationships between
optometrists and opticians and regulates the advertising of optometric services. *See*
Cal. Bus. & Prof. Code § 655, 2556; [2] Cal. Code Regs., tit. 16, §§ 1514, 1399.251.
Plaintiff again alleges that Defendants violate California law by allowing
consumers to obtain eye exams and purchase prescription eyewear in the same
retail location. (FAC ¶ 105.1-105.2.) Plaintiff now also alleges that Defendants'
advertising of "independent doctors of optometry" and the importance of eye exams
for eye health (1) violates various California statutes and regulations; and (2)
misleads consumers into believing they will receive a "comprehensive eye exam"
from a "truly 'Independent Doctor[] of Optometry," which they allegedly do not
receive. (*Id.* ¶ 69.)

Plaintiff vaguely claims that she viewed Defendants' advertisements and
formed the expectation she would receive a comprehensive eye exam from a
"wholly independent" optometrist. (*Id.* ¶¶ 81, 88.) Plaintiff claims this was her
sole motivation for coming to LensCrafters for an eye exam. (*Id.* ¶ 83.) She
alleges that she did not receive what she paid for because her exam was hurried and
performed by an optometrist who was not "truly independent," and because parts of
the exam were performed by a lay employee. (FAC ¶¶ 85, 90, 102.) She also

[2] Parties have litigated aspects of sections 655 and 2556, but no court or
regulatory body has ruled that a business model like Defendants' is unlawful.

alleges that she purchased overpriced eyewear at LensCrafters because she was in the store, her optometrist recommended LensCrafters eyewear, and she was given a discount. (*Id.* ¶¶ 94-95.)

## III. LEGAL STANDARD

A court must dismiss an action for lack of subject matter jurisdiction where a plaintiff fails to establish Article III standing. Fed. R. Civ. P. 12(b)(1); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Standing is a threshold issue and must be proven for each claim and form of relief sought. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also DaimlerChrysler Corp v. Cuno*, 547 U.S. 332, 352 (2006).

A court must also dismiss a complaint where the complaint fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a Court must accept all factual allegations as true, but need not accept unreasonable inferences or legal conclusions cast in the form of factual allegations. *See Iqbal*, 556 U.S. at 681 (formulaic recitation of elements of claim are not entitled to assumption of truth). To establish a plausible claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, Rule 9(b)'s heightened pleading standard applies where a plaintiff's claims sound in fraud. Courts in the Ninth Circuit have applied Rule 9(b) to CLRA, FAL, and UCL claims where a plaintiff has "allege[d] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

2009) (applying Rule 9(b) to UCL and CLRA claims sounding in fraud) (alteration in original) (citation and internal quotation marks omitted); *Frenzel v. AliphCom*, ___ F. Supp. 3d ___, No. 14-cv-03587-WHO, 2014 WL 7387150, at *7 (N.D. Cal., Dec. 29, 2014) (applying Rule 9(b) to UCL, CLRA, and FAL claims sounding in fraud). Even where a plaintiff has not alleged a unified course of fraudulent conduct, the plaintiff must still plead allegations of fraud with particularity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Under Rule 9(b), "averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged," *id.* at 1106 (citation omitted), as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false," *Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in original) (citation and internal quotation marks omitted).

## IV.  ARGUMENT

### A.  Plaintiff (And The Eyewear Class) Lack Article III Standing To Pursue Claims Based On An Alleged Overpayment For Eyewear.

To establish Article III standing, a plaintiff must allege an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation and internal quotation marks omitted). Consequently, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citations and internal quotation marks omitted).

Plaintiff must also show that this alleged injury was *caused* by Defendants' challenged conduct. *Lujan*, 504 U.S. at 560 ("[T]here must be a causal connection between the injury and the conduct complained of . . . ."). This "requirement []

demands [p]laintiff show [sic] each link in the causal chain between the defendant and the asserted injury." *Zivkovich v. Vatican Bank*, 242 F. Supp. 2d 659, 670 (N.D. Cal. 2002). The links in a causal chain must not be "'hypothetical or tenuous and [must] remain plausible.'" *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1141-42 (9th Cir. 2013) (quoting *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012)).

The Court previously dismissed Plaintiff's complaint after finding that Plaintiff failed to "allege a concrete or particularized injury to support Article III standing." (Order at 7.) Despite adding more words, Plaintiff has not corrected these problems.

### 1.      Plaintiff fails to allege an injury in fact.

Plaintiff again fails to satisfy Article III standing requirements for claims based on the purchase of higher priced eyewear because she fails to establish that she suffered an injury in fact. Plaintiff does not allege that Defendants' advertising or business model caused her to purchase eyewear when she otherwise would not have purchased eyewear at all. Rather, her sole claim of injury is that, had she not been at LensCrafters, she "would have availed herself of the open market for prescription eyewear" and supposedly paid less for the eyewear she purchased. (FAC ¶ 97.)

But Plaintiff does not even allege which eyewear she purchased, nor does she allege facts that establish she could have purchased that same eyewear somewhere else. Plaintiff suggests that her optometrist recommended "Advanced View Progressive Lenses" that were "exclusive to LensCrafters." (*Id.* ¶ 95.) If these exclusive lenses were indeed the lenses that Plaintiff bought, then she could not have purchased the same lenses elsewhere. Moreover, there is no allegation that Plaintiff had to purchase these lenses, or that there were no equivalent substitutes.

Nor does Plaintiff allege facts establishing that she could have and would have purchased equivalent eyewear for less on the "open market." While she

alleges prices at which she could have purportedly purchased "the same model frames . . . and lenses" for less at four specific online retailers, (*Id.* ¶¶ 96-96.4), nowhere does she allege that she would have actually purchased her eyewear from these online retailers. Nor does she allege that she could have or would have paid less at a comparable brick and mortar store.[3] Indeed, given the unique nature of prescription glasses, which must be made to match each customer, such comparisons improperly treat prescription glasses as mere commodities without any factual basis.

Plaintiff's "overcharge" theory is therefore too simplistic and theoretical to establish injury-in-fact, and she therefore lacks standing to pursue claims for the Eyewear Class. *See Two Jinn, Inc. v. Gov't Payment Serv., Inc.*, No. 09CV2701JLS (BLM), 2010 WL 1329077, at *3-4 (S.D. Cal. April 1, 2010) (dismissing FAL and UCL claims for lack of Article III standing where plaintiff alleged attenuated theory of competitive harm).

### 2. Plaintiff fails to allege causation.

Further, even if Plaintiff had pleaded that she was overcharged for her eyewear, she again fails to plausibly explain how this alleged harm resulted from the conduct she complains of—namely Defendants' advertising of "independent doctors of optometry" and their business model. Plaintiff speculates that by "lur[ing]" consumers into LensCrafters with "on-site examinations from supposedly 'Independent' doctors," Defendants are able to "fleece LensCrafters customers . . .

---

[3] Common sense dictates that the prices a business charges to consumers reflect a variety of components such as overhead costs, profit margins, and the price of input materials. There mere difference in price between competitors proves nothing, and certainly does not establish that one party's conduct is illegal, unfair, or fraudulent.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

into paying exorbitantly high prices for their prescription eyewear." (FAC ¶ 78.) She complains that consumers' decisions to purchase eyewear are "heavily influenced by their optometrists' recommendations and sales pressures" because optometrists often recommend that consumers "strongly consider proprietary features that only LensCrafters sells." (FAC ¶¶ 75.2, 78.)

Plaintiff provides no facts, however, that plausibly connect Defendants' complained of conduct to its purported ability to overcharge consumers for eyewear. Plaintiff does not allege, for instance, that Defendants tie the receipt of an eye exam to consumers' eyewear purchase or that they otherwise prevent consumers from filling their prescriptions elsewhere[4] or from comparison shopping eyewear online as Plaintiffs' attorneys have done.[5] She does not allege that Defendants misrepresented they had the lowest price on the market; in fact, she complains that Defendants do *not* advertise competitive prices. (*Id.* ¶ 73.) That optometrists might recommend particular eyewear does not establish that Defendants' business model or their advertising allows them to overcharge consumers, particularly when the consumers can compare prices and take their prescription elsewhere to buy glasses.

Nor does Plaintiff allege that Defendants' advertising or business model *caused her* to purchase overpriced eyewear. Plaintiff alleges three reasons for

_____

[4] Federal regulations require optometrists to release prescriptions for corrective lenses to patients, whether or not requested, so that patients can purchase their prescription wherever they choose. *See* 16 C.F.R. §§ 315.3, 456.2. Plaintiff does not allege that these regulations were violated or that her prescription was not released to her.

[5] In fact, with the advent of smart phones, most consumers can compare prices for products online while they are in-store shopping.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

purchasing her eyewear: (1) she was offered an "illusory 40% discount on her lenses *and* frames"; (2) she was already in the store for a "comprehensive eye exam from an 'Independent Doctor of Optometry'"; and (3) her optometrist "noted the potential need for follow-up care, the importance of the AccuFit system . . ., and that the recommended 'Advanced View Progressive' lenses were exclusive to LensCrafters." (*See* FAC ¶¶ 94-95 (emphasis in original).)  But Plaintiff offers no *facts* establishing that the 40% discount was illusory or improper; nor does she allege any connection between the discount and Defendants' practice of offering eye exams and eye wear at LensCrafters and advertising "independent doctors of optometry."

She also fails to explain how her optometrist's statements caused her to overpay for her eyewear when she was free to take her prescription elsewhere or compare prices before purchasing.  Plaintiff does not allege that Defendants or her optometrist represented that LensCrafters had the lowest prices for eyewear—or that the optometrist talked about price at all.[6]

Plaintiff and the Eyewear Class therefore lack Article III standing.

**B.**     **Similarly Plaintiff (And The Eyewear Class) Lack Statutory Standing Under the UCL, FAL, and the CLRA To Pursue Claims Based on the Alleged Overpayment for Eyewear.**

Plaintiff (and the Eyewear Class) also fail to establish standing under the

_____

[6] If Plaintiff's claims are based on allegations that Defendants concealed information, Plaintiff also lacks standing.  Plaintiff alleges no facts giving rise to a duty to disclose.  *See Kane v. Chobani Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253, at *9 n.6 (N.D. Cal. Sept. 19, 2013) (dismissing CLRA and UCL claims for lack of standing where claims were based on defendant's failure to disclose its alleged non-compliance with labeling laws and plaintiff had not "alleged that Defendant had a duty to disclose or identified the basis for this duty").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

UCL, FAL, and CLRA.  *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 324 (2011) (noting that UCL and FAL standing requirements are more stringent than Article III standing).  To have standing under the UCL or FAL, a private individual must have "suffered [an] injury in fact and [] lost money or property *as a result of* the unfair competition."  Cal. Bus. & Prof. Code § 17204 (emphasis added); *id.* § 17535.  Similarly, under the CLRA, plaintiffs must "show not only that a defendant's conduct was deceptive but that the deception *caused* them harm."  *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009) (emphasis added) (quoting *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1292 (2002)).  Thus, Plaintiff must show that Defendants—by advertising independent doctors of optometry and enabling consumers to purchase eye exams and eyewear in the same location—*caused* her to lose money or property.

The Court previously dismissed Plaintiff's claims after finding that Plaintiff "fail[ed] to sufficiently allege economic injury to establish standing under the UCL and CLRA."  (Order at 7.)

For the reasons discussed above, Plaintiff again fails to allege not only economic injury (*i.e.*, that she lost money or property), but that such harm was caused by Defendants' advertising or business model.  Plaintiff pleads only conclusory allegations that she overpaid for her eyewear.  She further fails to plead facts that plausibly connect Defendants' advertising or business model to (1) its ability to allegedly overcharge consumers for their eyewear, or (2) Plaintiff's own alleged overpayment for her eyewear.

Federal courts have routinely dismissed UCL, FAL, and CLRA claims where, as here, those claims are supported only by conclusory or speculative causation allegations.  *See, e.g.*, *Backhaut v. Apple, Inc.*, No. 14-CV-00285-LHK, 2014 WL 6601776, at *10  (N.D. Cal. Nov. 19, 2014) (dismissing CLRA and UCL claims where "[p]laintiffs [] failed to allege that they overpaid for their Apple devices in reliance on misrepresentations, omissions, or other wrongful conduct by

Apple"); *Cullen v. Netflix, Inc.* No. 5:11-CV-01199-EJD, 2013 WL 140103, at *4

(N.D. Cal. Jan. 10, 2013) (dismissing CLRA, UCL, and FAL claim based on

"unsubstantiated assertions" of causation); *Lorenzo v. Qualcomm Inc.*, No.

08CV2124 WQH (LSP), 2009 WL 2448375, at *6 (S.D. Cal. Aug. 10, 2009)

(holding that plaintiff lacked standing to bring his claims because he had "not

allege[d] any facts to support a finding that [he] paid more for [his] phone than a

comparable phone as a result of [the defendant's] unlawful, unfair and/or fraudulent

conduct"). As detailed above, Plaintiff does not allege, for instance, that she was

forced into buying eyewear at LensCrafters, that she was restricted from pricing or

purchasing eyewear at other locations, or that Defendants made any

misrepresentations about having the lowest priced eyewear.

Plaintiff's (and the Eyewear Class's) claims therefore must be dismissed for

lack of statutory standing.

**C.    Plaintiff Does Not Meet Article III or Statutory Standing Requirements for Her UCL "Unlawful" Claim.**

Plaintiff also lacks standing to pursue a UCL "unlawful" claim. *Daimler*

*Chrysler Corp*, 547 U.S. at 352 (standing must be proven for each claim). Because

Plaintiff alleges neither injury nor causation for her eyewear purchase, Plaintiff's

remaining theories of injury relate to her purchase of an eye exam. First, Plaintiff

appears to allege that she was harmed because she paid for an eye exam with the

expectation—based on Defendants' advertisements—that she would receive a

comprehensive eye exam from an independent optometrist, which she did not

receive. (*Id.* ¶¶ 81, 93.2-93.4.) Second, Plaintiff contends that she paid for an eye

exam that Defendants were "not legally permitted to sell." (FAC ¶ 93.1.) Neither

of these theories supports Article III or statutory standing requirements.

**1.    Plaintiff cannot connect her purchase of an allegedly non-comprehensive eye exam to Defendants' *unlawful* conduct.**

Plaintiff's first theory of injury, that she purchased a non-comprehensive eye

exam from a non-independent optometrist, fails to establish Article III or statutory

CROWELL
& MORING LLP
ATTORNEYS AT LAW

standing because Plaintiff does not allege that Defendants' *unlawful* conduct *caused* this harm.  Stated differently, Plaintiff does not allege that she came to LensCrafters for an eye exam because she was able to purchase both her eye exam and eyewear there.

Rather, Plaintiff alleges that her "*sole* motivation for coming to LensCrafters . . . *and purchasing an eye exam*" was her expectation that she would receive a comprehensive eye exam from an independent doctor of optometry.  (FAC ¶ 83 (emphasis added); *see also id.* ¶ 94 ("Had Plaintiff not come to LensCrafters based on Defendants' representations that she could get a comprehensive eye exam from a truly independent doctor of optometry at the LensCrafters location, Plaintiff would have had no other reason to come to LensCrafters for any purpose").)  Plaintiff alleges that she developed this expectation after viewing Defendants' advertisements "regarding the availability of comprehensive eye examinations from 'Independent Doctors of Optometry' employed by 'Eyexam of California, Inc.'" (*Id.* ¶ 81.)  She acknowledges that "each time the phrases 'Independent Doctor of Optometry' and 'eye exam' are used on LensCrafters' website" they bear an asterisk that explicitly states LensCrafters *does not* "provide eye exams or employ doctors of optometry" and that eye exams "are available at LensCrafters locations from licensed optometrists employed by EYEXAM of California, a licensed vision health care services plan."  (*Id.* ¶ 35.)[7]

Plaintiff makes no attempt to explain how these particular advertisements— which created her sole motivation to come to LensCrafters and purchase an eye exam—are unlawful.  LRNA does not advertise the "furnishing of" an optometrist's services in violation of California Business and Professions Code section  2556 or

---

[7] Plaintiff does not appear to, and cannot, challenge EYEXAM's ability as a licensed vision health care services plan to employ optometrists.

California Code of Regulations title 16 section 1399.251; the LensCrafters'

advertisements explicitly state that licensed optometrists employed by EECA

provide those exams.[8] Nor do they (1) advertise or hold themselves out as

optometrists in violation of California Business and Professions Code section 3040;

or (2) "link[] [an] optometrist's name, or practice, in advertising or in any other

manner with that of the commercial (mercantile) concern from whom he/she is

leasing space" in violation of California Code of Regulations, title 16, section 1514.

Plaintiff pleads no facts to suggest otherwise.

Further, Plaintiff also lacks standing to the extent she contends she did not

receive a comprehensive eye exam because Defendants violate California Business

and Professions Code sections 3040 and 3041 by having lay employees assist with

exams (FAC ¶ 85, 102). Plaintiff alleges—without any detail—that "[c]ritical

aspects of the exam were performed by a lay employee of LRNA." (*Id.*) Notably,

Plaintiff does not explain which aspects were performed by a lay employee; this is

likely because California Business and Professions Code section 2544 *explicitly*

*allows* an assistant under the "direct responsibility and supervision of an

ophthalmologist or optometrist" to perform tonometry, lensometry, automated

visual field testing, and other "simple noninvasive testing of visual acuity, pupils,

and ocular motility." Plaintiff therefore alleges no *facts* to establish that

_____

[8] Indeed, in *Drucker v. State Bd. Of Med. Exam'rs*, the Court of Appeal

approved of the trial court's determination that "furnish" as used in section 2556

means that a non-optometrist "provid[es] [optometrist's] services either

gratuitous[ly] or for a fee." 143 Cal. App. 2d 702,711 (1956) (internal quotation

marks omitted). So to advertise the furnishing of an optometrist's services,

Defendant LRNA would need to advertise that it provides optometric services.

LRNA does exactly the opposite here.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-14-

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

Defendants violated California law by allowing lay employees to assist with exams.[9]

Plaintiff therefore fails to plausibly connect her alleged harm in paying for an eye exam to Defendants' *unlawful* conduct.

### 2. Purchasing an eye exam that Defendants were allegedly prohibited from selling does not establish standing.

Plaintiff also fails to establish standing to pursue a UCL "unlawful" claim based on her purchase of an eye exam that Defendants were allegedly "not legally permitted to sell." (FAC ¶ 93.1).

First, this "injury" is insufficient for statutory standing. Courts have rejected standing theories based solely on illegality and "moral injury" because it would, if accepted, "eviscerate the enhanced standing requirements imposed by . . . [the UCL] and the Supreme Court's decision in *Kwikset*." *Kane*, 2013 WL 5289253, at *9 (dismissing UCL and FAL claim for lack of standing where plaintiffs relied solely on allegations that they "would not have purchased a product that was misbranded"); *Animal Legal Def. Fund v. Mendes*, 160 Cal. App. 4th 136, 146-47 (2008) (holding plaintiffs lacked standing where they alleged they purchased products on assumption they were "being produced in accordance with California law"; plaintiffs received economic benefit of their bargain).

Second, Plaintiff fails to articulate how Defendants' advertising caused her to purchase an eye exam that Defendants allegedly sold illegally. As noted above, Plaintiff alleges that she purchased an eye exam solely because she expected a comprehensive eye exam from an independent optometrist. (FAC ¶¶ 81-83.) Plaintiff does not allege that Defendants affirmatively misrepresented the legality of

---

[9] If Plaintiff were truly concerned about any part of her eye exam she could have availed herself of EECA's statutorily-mandated grievance process. *See* Cal. Health & Safety Code § 1368, *et seq.* Notably, she did not.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

their business model, nor does she allege that Defendants had a duty to disclose specifics about their business model and compliance with California Business and Professions Code sections. Simply put, Plaintiff does not allege that the structure of Defendants' operations caused her to obtain an eye exam or purchase lenses.

Plaintiff therefore does not have statutory or Article III standing to pursue a UCL "unlawful" claim.

### D. Plaintiff Fails to Establish Any Likelihood of Future Injury as Required for Injunctive Relief Under Article III.

Additionally, Plaintiff lacks standing under Article III to pursue her claim for injunctive relief because she again fails to allege a "likelihood of future injury." *See White*, 227 F.3d at 1242 (internal quotation marks omitted). To seek injunctive relief, a plaintiff must show more than a past wrong but a "sufficient likelihood that he will again be wronged in a similar way." *Lyons*, 461 U.S. at 103, 111.

In its March 23, 2015 Order dismissing Plaintiff's Complaint, the Court dismissed Plaintiff's prayer for injunctive relief because Plaintiff had failed to "allege [a] threat of repeated injury . . . ." (Order at 7).

Plaintiff has done nothing in her FAC to remedy this deficiency, nor can she. *See Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 997 (N.D. Cal. 2007) (holding plaintiffs lacked standing for injunctive relief where plaintiffs did not allege current subscription nor intent to subscribe to defendant's services in future). To the contrary, Plaintiff alleges multiple times that she would not have come to LensCrafters and purchased her eye exam or eyewear had she known "that her eye examination would not be comprehensive" or performed by an "independent doctor of optometry." (FAC ¶¶ 90-92.)

Plaintiff's allegations therefore establish that she is virtually certain not to be harmed again by Defendants' conduct. *Burns v. Tristar Prods., Inc.*, No. 14-cv-749-BAS (DHB), 2014 WL 3728115, at *3 (S.D. Cal. July 25, 2014) (dismissing injunctive relief claims under UCL and CLRA for lack of Article III standing where

plaintiff failed to allege she intended to purchase defendants' product in future and, in fact, alleged she would not have purchased product had she known its quality); *Castagnola v. Hewlett-Packard Co.*, No. C 11-05772 JSW, 2012 WL 2159385, at *5-6 (N.D. Cal. June 13, 2012) (dismissing plaintiffs' claim for injunctive relief because even if plaintiffs had alleged that they would purchase from Snapfish in the future, plaintiffs' knowledge of Snapfish's terms and conditions did not "show[] a realistic threat they would be harmed by [d]efendants' conduct in future").

Thus, for the same reasons the Court dismissed Plaintiff's prayer for injunctive relief in her initial complaint, so too should Plaintiff's prayer for injunctive relief in her FAC be dismissed.

**E.**     **Plaintiff Fails to State a CLRA, FAL, or UCL "Unfair" or "Fraudulent" Claim With Particularity.**

Plaintiff is required but fails to plead her CLRA, FAL, and UCL "unfair" and "fraudulent" claims ("misrepresentation claims") with particularity under Rule 9(b). Plaintiff's misrepresentation claims are based on Plaintiff's allegations that Defendants (1) falsely advertise "independent doctors of optometry"; and (2) mislead consumers into believing they will receive "comprehensive eye exams." (*See, e.g.*, FAC ¶¶ 110-114, 120-122, 126-127, 138.1-139.)  As such, Plaintiff must satisfy Rule 9(b)'s heightened pleading requirements by alleging the "'who what, when, where, and how'" of the misrepresentations charged.  *See Kearns*, 567 F.3d at 1125-27 (UCL and CLRA claims grounded in fraud must be pled with particularity under Rule 9(b)); *Frenzel v. AliphCom*, No. 14-cv-03587-WHO, 2014 WL 7387150, at *7 (N.D. Cal. Dec. 29, 2014) (applying Rule 9(b) to UCL, CLRA, and FAL claims sounding fraud).

In *Kearns*, the Ninth Circuit dismissed plaintiff's CLRA and UCL claims sounding in fraud where plaintiff did not specify (1) the content of purportedly misleading advertisements and sales materials, (2) when he was exposed to misrepresentations, and (3) which misrepresentations he found material and upon

which he relied. *Kearns*, 567 F. 3d at 1125-26; *see also Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 964 (N.D. Cal. 2013) (dismissing UCL, FAL, and CLRA claims where plaintiff's complaint did not "clearly indicate the content of the labels upon which Brazil allegedly relied when making his purchases or the advertisements and website statements that he saw and supposedly found misleading").

Similarly, in *Frenzel*, the court dismissed CLRA, UCL, and FAL claims as insufficiently pled under Rule 9(b) where plaintiff alleged a number of specific representations but "fail[ed] to specify which, if any, of the[] statements [plaintiff] personally reviewed and relied on." 2014 WL 7387150, at *10. The court found it insufficient that plaintiff broadly alleged he "reviewed [defendant's] marketing materials and representations, and that he purchased his second generation Jawbone UP based on those representations." *Id.* (internal citation and quotation marks omitted). The court also found plaintiff's allegation that he "reviewed [defendants' advertisements] before purchasing his Jawbone UP device" insufficient because there was "no indication as to how long before the purchase his review occurred." *Id.* at *11.

Here too, Plaintiff's misrepresentation claims suffer from the same fatal flaw as in *Frenzel* and *Kearns*: Plaintiff generally alleges that she viewed Defendants' "representations on its website and in its advertising regarding the availability of comprehensive eye examinations from 'Independent Doctors of Optometry'" (FAC ¶ 81), but she does not state which particular advertisements she viewed, what they specifically said, or when she viewed them. This is particularly problematic because Plaintiff does not actually allege that Defendants advertise "comprehensive eye exams"; rather, she alleges that the amalgamation of various advertisements about the importance of eye exams for eye health lead consumers to believe they will receive a "comprehensive eye exam." (*See, e.g.*, ¶¶ 52-56.2.) Yet Plaintiff does not allege which of Defendants' advertisements she viewed that gave her this

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-18-

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

impression.

It is Plaintiff's burden to provide the specifics of which representations she viewed and on which she relied so that Defendants can properly defend against her claims. *See Vess*, 317 F.3d at 1106 (particularity is required so defendants can "defend against the charge and not just deny that they have done anything wrong." (internal citation and quotation marks omitted)). Plaintiff's conclusory allegations do not satisfy Rule 9(b)'s heightened pleading requirements.

**F.** **Plaintiff's Misrepresentation Claims Should be Dismissed to The Extent They Rely on Alleged Misrepresentations Regarding Comprehensive Eye Exams.**

Plaintiff's misrepresentation claims further fail to the extent they are based on Defendants' purported misrepresentations regarding the availability of comprehensive eye exams. Statements are actionable under the UCL, CLRA, or FAL only if they are likely to deceive a reasonable consumer. *See Ford v. Hotwire, Inc.*, No. C-07-CV-1312 H (NLS), 2008 WL 5874305, at *4-5 (S.D. Cal. Feb. 25, 2008) (dismissing CLRA, FAL, and UCL claims where no reasonable consumer was likely to be misled by defendants' advertising). "[L]ikely to deceive" requires that the deception is "probable" and not "merely possible." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *Ford*, 2008 WL 5874305, at *3.

Plaintiff does not even allege that Defendants advertise "comprehensive eye exams" let alone that a reasonable consumer would likely view Defendants' advertisements, believe they would receive a "comprehensive eye exam," and be misled by such a representation. Plaintiff suggests that, by advertising the importance of eye exams for eye health, Defendants mislead consumers into believing they will receive a comprehensive eye exam. (FAC ¶¶ 52-56.2.) Plaintiff asserts without support that the concept of a "comprehensive eye exam" incorporates a standard of care that "should include visual-acuity tests, color-blindness tests, 'cover' tests, retinoscopy, refraction, autorefraction or aberrometers, slit-lamp examination, Gluacoma test, pupil dilation, [and] visual-field tests." (*Id.* ¶

CROWELL
& MORING LLP
ATTORNEYS AT LAW

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

60.) Plaintiff speculates that such an exam "conducted according to the standard of care by a reasonably diligent physician should take at least 30 to 45 minutes." (*Id.*) She now claims she did not receive a comprehensive eye exam because the exam was hurried, the optometrist did not perform certain tests, and a lay employee performed aspects of the exam. (*Id.* ¶ 85.)

But Plaintiff offers no facts to support her conclusory allegations. For example, she does not allege an objective or plausible definition of "comprehensive eye examination" to establish that a reasonable consumer would impart the same meaning—with all the intricacies Plaintiff alleges—to the phrase. *See Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978-80 (C.D. Cal. 2013) (dismissing claims where plaintiff could not point to any source, including dictionary or Food and Drug Administration guidance, to support her definition of "all natural"); *Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d 811, 828-29 (N.D. Cal. 2013) (dismissing claim where plaintiff failed to "cite a single source" to establish consumers would be misled into believing that "Sue Bee Clover Honey" contained pollen). Indeed, there is no legal standard or minimum requirement in California for an eye exam.

Nor does she plausibly allege that a reasonable consumer would likely expect *all* aspects of an eye exam—even basic tests—to be performed solely by an optometrist, particularly when California law permits lay employees to perform aspects of the exam under an optometrist's supervision and responsibility. *See* Cal. Bus. & Prof. Code § 2544 (allowing for visual acuity, visual field, and tonometry to be performed by assistants under supervision and responsibility of an optometrist). Courts have dismissed claims to the extent they rely on insufficient legal theories. *See Johnson v. Wells Fargo Home Mortg. Inc.*, No. EDCV 13-01044-VAP (OPx), 2013 WL 7211905, at *9 (C.D. Cal. Sept. 13, 2013) (dismissing claims under Fair Credit Reporting Act and California Consumer Credit Reporting Agencies Act to the extent they relied on theory that failed as a matter of law); *Hoang v. Vinh Phat*

*Supermarket, Inc.*, No. CIV. 2:13-00724 WBS GGH, 2013 WL 4095042, at *12-13 (E.D. Cal. Aug. 13, 2013) (dismissing claims to the extent they relied on alter ego theory for recovery). Likewise, any claims based on the alleged (and non-existent) representations regarding "comprehensive eye exams" should be dismissed. No reasonable consumer would understand them as Plaintiff purportedly did or find them deceptive. To the extent based on purported misrepresentations regarding so-called comprehensive eye exams, the claims should be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Defendants LRNA and EECA respectfully request that the Court dismiss Plaintiff's complaint in its entirety.

Dated: June 8, 2015

Respectfully submitted,

CROWELL & MORING LLP

By:      /s *Steven D. Allison*
Steven D. Allison

Attorneys for Defendants
Luxottica Retail North America Inc. and
EYEXAM of California, Inc.
sallison@crowell.com

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-21-

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)

# CERTIFICATE OF SERVICE

Pursuant to Rule 5.2 of the Local Civil Rules of Practice for the United States District Court for the Southern District of California, I hereby certify under penalty of perjury under the laws of the United States of America that on June 8, 2015, a true copy of the above document was filed through the Court's Electronic Case Filing system and served by that system upon all individuals registered in the system in the above-captioned case. I further certify that a true copy of the above document was served by electronic and/or first-class mail upon all non-registered parties to the case.

By: *s/ Steven D. Allison*
Steven D. Allison

Attorneys for Defendants
Luxottica Retail North America Inc. dba
LensCrafters and EYEXAM of California, Inc.
sallison@crowell.com

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-22-

MEMO OF PS AND AS ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT;
CASE NO. 14CV0366 JAH (BLM)